UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC MARITIME ASSOCIATION,<br><br>    Plaintiff,<br><br>    v.<br><br>INTERNATIONAL LONGSHORE AND WAREHOUSE UNION LOCAL 34<br><br>    Defendant. | Case No. 15-cv-02499-JD<br><br>**ORDER RE MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 6 |

Pacific Maritime Association ("PMA"), which represents employers of dockworkers in labor disputes, moves for a temporary restraining order seeking enforcement of an interim arbitration award prohibiting work stoppages by International Longshore and Warehouse Union Local 34. Because PMA did not provide a copy of the agreement authorizing the arbitration award, the Court defers ruling on the motion until a copy is filed. While that is being done, the Court directs the parties to stipulate to a briefing schedule on the temporary restraining order and preliminary injunction.

## I.      FACTUAL BACKGROUND

According to the affidavits PMA submitted with its motion, PMA represents companies that operate in the Ports of Oakland and San Francisco (as well as other ports) in collective bargaining negotiations. *See* Decl. of Richard Marzano ¶ 2, Dkt. No. 11. The defendant, International Longshore and Warehouse Union Local 34, is a local of the International Longshore and Warehouse Union ("ILWU"), and represents clerks at ports in the San Francisco Bay Area. *Id.*

Between 2008 and July 1, 2014, ILWU, ILWU Local 34, and PMA were parties to a collective bargaining agreement, which PMA refers to as the Pacific Coast Clerk's Contract

Document ("PCCCD").[1]  *See id.* ¶ 3.  Under that agreement, according to PMA, on-the-job disputes, such as work stoppages, would be addressed by "interim" awards following an informal hearing by an "area arbitrator."  *See id.* ¶ 10.  The only way to challenge or appeal these interim awards was to request that the area arbitrator conduct a "formal" hearing.  *See id.*

After the PCCCD expired, the parties agreed to a Memorandum of Understanding ("MOU") setting forth the terms envisioned for the next PCCCD.  Among other things, the parties agreed to replace each area arbitrator with a panel of three arbitrators -- one employer-selected, one union-selected, and one neutral.  *See id.* ¶ 6.  In the meantime, until this new system could be implemented, the parties agreed that "a temporarily modified grievance and arbitration procedure shall be in effect," in which area arbitrator authority would be "limited to determining conditional/maximum penalty cargo rates and to interim rulings . . ." and "[f]ormal grievance arbitration shall remain suspended until the ratification and implementation of the MOU."  *See* Feb. 22, 2015, Letter Agreement, Dkt. No. 11-2.  The MOU was ratified on May 22, 2015, but the provisions for replacing each area arbitrator with a three-arbitrator panel have not yet been implemented.  *See* Marzano Decl. ¶ 8.  According to PMA, it and the ILWU agreed in the presence of a federal mediator to return to work as normal pursuant to the provisions of the 2008-2014 PCCCD, despite the fact that it was no longer in effect.  *See id.* ¶ 5.

The dispute that gives rise to this motion began on May 31, 2015, when PMA claims that Local 34 refused to fill second shift clerk orders placed by employers.  *See* Decl. of Tosca Bonardi ¶ 2, Dkt. No. 9; Decl. of William Bartelson ¶ 2, Dkt. No. 8.  PMA initially filed a complaint under the PCCCD, which was referred to William Niland, the area arbitrator for the San Francisco Bay Area.  *See* Bonardi Decl. ¶ 3; Bartelson Decl. ¶ 3.  After an ex parte hearing, and a subsequent hearing with both parties present, Arbitrator Niland found Local 34 in violation of the no-stoppage provisions of Section 11 of the 2008-2014 PCCCD.  *See* Bonardi Decl. ¶¶ 4-5; Bartelson Decl. ¶¶ 4-5.  On June 1, 2015, Arbitrator Niland issued a written interim decision, ordering Local 34 to "accept and dispatch employer's orders."  *See* Interim Decision of William Niland, NCAA-0013-

---

[1] The agreement also appears to be known as the Pacific Coast Longshore and Clerks' Agreement, or PCL&CA.  *See* Memorandum of Understanding, Dkt. No. 11-3.

2015, at 7, Dkt. No. 8-1. According to PMA, Local 34 has refused to comply with Arbitrator Niland's decision, and failed to dispatch clerks for the second shift on May 31, 2015 to certain employers. *See* Bonardi Decl. ¶ 8; Bartelson Decl. ¶ 8. It believes that without injunctive relief, Local 34 will continue not to accept and dispatch employers' orders for weekend labor. *See* Bartelson Decl. ¶ 10.

## II.   LEGAL STANDARD

As a general rule, a district court's power to issue injunctions in labor disputes is limited by the Norris-LaGuardia Act, 29 U.S.C. §§ 101, *et seq*. The Labor Management Relations Act, however, authorizes certain suits to enforce collective bargaining agreements. In reconciling these two statutes, the Supreme Court recognized an exception to the Norris-LaGuardia Act's anti-injunction rule, and allowed federal courts to enjoin strikes that were held in violation of a no-strike agreements where the dispute is clearly arbitrable. *See Boys Markets v. Clerks Union*, 398 U.S. 235, 254 (1970); *Buffalo Forge Co. v. United Steelworkers of America, AFL-CIO*, 428 U.S. 397, 405 (1976); *Northern Stevedoring & Handling Corp. v. Int'l Longshoremen's & Warehousemen's Union, Local No. 60*, 685 F.2d 344, 348 (9th Cir. 1982). This "narrow" exception is "restricted to a closely circumscribed class of cases," and "injunctive relief issued thereby must be conditioned upon a detained [sic] set of factual findings." *Northern Stevedoring*, 685 F.2d at 344, 348-49 (quoting *Donovan Const. Co. v. Const., P. & M. Lab. U.L.* 383, 533 F.2d 481 (9th Cir. 1976)). Moreover, any such grant must follow the procedural requirements of section 7 of the Norris-LaGuardia Act, under which a hearing is generally necessary, if feasible:

> No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court . . .
>
> Such hearing shall be held after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, and also to the chief of those public officials of the county and city within which the unlawful acts have been threatened or committed charged with the duty to protect complainant's property: *Provided, however*, That if a complainant shall also allege that, unless a temporary restraining order shall be

3

>issued without notice, a substantial and irreparable injury to complainant's property will be unavoidable, such a temporary restraining order may be issued upon testimony under oath, sufficient, if sustained, to justify the court in issuing a temporary injunction upon a hearing after notice. Such a temporary restraining order shall be effective for no longer than five days and shall become void at the expiration of said five days.

29 U.S.C. § 107; *see also Northern Stevedoring*, 685 F.2d at 348.

### III. DISCUSSION

PMA's position is that during this interim period, between the expiration of the previous PCCCD and the ratification and implementation of the MOU, formal grievance procedures are suspended, so Arbitrator Niland's interim decision is final and unappealable, and therefore appropriate for enforcement through injunctive relief by a district court. *See* Bartelson Decl. ¶ 9; Marzano Decl. ¶ 11.

As a preliminary matter, the Court is not sure that this premise is correct. According to the parties' letter agreement, "[f]ormal grievance arbitration shall remain suspended until the ratification and implementation of the MOU," Feb. 22, 2015, Letter Agreement, but according to the written arbitrator award, PMA took the position that "the MOU was ratified and the PCL&CA implemented on May 23, 2015 at 8:00 a.m." *See* Interim Decision of William Niland, NCAA-0013-2015, at 2. That suggests that formal grievance arbitration is now once again available, even if the MOU's new three-panel arbitration procedures have not yet been put into effect, and the arbitrator's decision is therefore not unappealable.

Be that as it may, the more fundamental problem is that the Court has not been provided with a copy of the PCCCD, and is therefore unable to verify that the labor dispute in question is one that the parties agreed to arbitrate, and that an arbitration consistent with the PCCCD was held. As the Supreme Court has held, "[w]hen a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract does have that effect . . . ." *Boys Markets*, 398 U.S. at 254. While the declaration of Richard Marzano states that "[t]rue and correct copies of relevant portions of the PCCCD are attached here as Exhibit C," Exhibit C to his declaration in fact appears to be a Memorandum of Understanding between PMA and ILWU, signed March 3,

4

2015, with various letters of understanding attached.  *See* Dkt. No. 11-3.  Without a copy of the PCCCD, the Court is unable to determine if this case falls within the "closely circumscribed class of cases," in which the Court can grant injunctive relief.  *Northern Stevedoring*, 685 F.2d at 344.

On that basis, the Court defers ruling on the motion for a temporary restraining order and request for an order to show cause regarding a preliminary injunction.  Since it appears likely that PMA will file a copy of the PCCCD shortly, the Court directs the parties to work out a briefing and hearing schedule on the temporary restraining order and preliminary injunction.  The Court advises the parties to consider stipulating to an agreement in lieu of TRO proceedings so that the matter can move straight to an injunction hearing without that intermediate step.  The Court notes that 29 U.S.C. § 107 requires that injunctive relief be granted only after a hearing in open court, unless the plaintiff alleges that "substantial and irreparable injury to complainant's property will be unavoidable" if a hearing is held.  Since the potential stoppage appears to be limited to weekend labor, *see* Ex Parte Application ¶¶ 2, 5, the Court directs the parties to provide a brief statement not exceeding 3 pages each to be filed with the briefing schedule stating their views on whether injunctive relief can be granted without a hearing.  **The briefing schedule and hearing statements must be filed by 5:00 p.m. on Tuesday, June 9, 2015.**  The Court expects the parties to work together cooperatively and expeditiously to meet this deadline.  Any failure to do so that the Court finds is not warranted by good cause will result in sanctions.

**IT IS SO ORDERED.**

Dated: June 8, 2015

_____
JAMES DONATO
United States District Judge